Hancock *v.* Salmon.

---

SAME TERM. *Before the same Justices.*

### HANCOCK *vs.* SALMON and LOOMIS.

Where a justice of the peace, while the jury are deliberating upon their verdict, enters the jury room at their request, and with the knowledge and consent of the defendant, a consent that he may read to the jury the testimony of a witness will be implied.

THIS was an appeal, by the defendants, from a judgment of the Oswego county court, affirming a judgment rendered by a justice of the peace. Before the justice the plaintiff recovered a judgment for $16. The opinion of the court contains a statement of the facts.

*R. H. Tyler*, for the appellants.

*J. Crombie*, for the respondent.

*By the Court*, GRIDLEY, J.   The only ground relied on for reversing the judgment in this cause, is the alledged irregularity of the justice, in entering the jury room and reading the testimony of a witness to the jury in the absence of the parties. The justice in the first instance returned that he went into the jury room, by the consent of the defendants or their counsel; and that when he had entered, the jury wanted him to read to them the testimony of a witness by the name of Gardner, and he consented.   On a further return he states the facts of his going into the jury room with more particularity.   He says that " while the jury were deliberating on their verdict the constable came to the door and asked for the justice, remarking that the jury wanted to see him; that Melville F. Stevens, one of the counsel for the defendants, was standing by the door, and that Lewis E. Loomis [one of the defendants] was standing by his side.   That as the constable came to the door as aforesaid, I was seated at a short distance off, and the said Stevens spoke : ' Esquire, the jury want to see you.'   I hesitated about going in ; and thereupon the said Lewis E. Loomis put his hand on my shoulder, and said again, ' Esquire, the jury want to see you.' I went into the jury room as stated in my former return."   Upon this return, the only question is whether a consent to go into the jury room includes a consent to read the testimony of a witness.

In the case of *Taylor* v. *Betsford*, (13 *John.* 487,) it was held that a consent to enter and answer questions proposed by the jury, will not be inferred from the *knowledge* and *silence* of the parties, but that the consent must be expressly given. In *Thayer* v. *Van Vleet*, (5 *John.* 111,) it is decided that going in and answering an inquiry of the jury whether they could add any thing to the plaintiff's damages, in the negative, was not an error for which the judgment would be reversed, and that the consent of parties might be inferred.   In *Bunn* v. *Croul*, (10

*John.* 239,) the court reversed a judgment where the justice went into the jury room and explained the testimony of a witness on a point of fact, and where it could not be inferred that any consent was given. In *Niel* v. *Abel*, (24 *Wend.* 185,) it was held erroneous for the justice to give his minutes of evidence to the jury, without consent. In none of these cases did the precise question arise which is presented in this cause, namely, whether the consent of the party that the justice should go into the jury room, under the circumstances of this case, embraces also a consent to the reading of the testimony of a witness. In the case of *Whitney* v. *Crim*, (1 *Hill*, 61,) after the testimony was closed, Whitney the defendant told the justice *that the jury wished to see him*, and he went in, in the presence of both parties. In speaking of this permission, Bronson, J. says, " This amounted to little if any thing short of an express consent that the justice should go into the jury room, and he should not now complain of that act. *Taylor* v. *Betsford*, (13 *John.* 487,) is an extreme case, and we ought not to go beyond it." We think there was an express consent given in this case to go in and hear what the jury wanted. It is true there was no *express consent* given, to read the testimony in the absence of the parties. But what construction was the justice authorized to put on this consent, given as it was when the justice was hesitating about entering the jury room ? Did the defendant mean that the justice should go in and learn what the jury wanted and then return and report that fact to the parties ? or did he mean that the justice should go in and do whatever it was proper to do, in the presence of the parties ? We think he meant the latter. He did not propose to go in with the justice. He did not advise to have the justice call the jury into court again. He knew that the jury wanted something of the justice—either an explanation of the testimony, or advice on the law. And a bare consent that the justice should go in and hear what the jury wanted, and then leave them without any answer, would be absurd. We think therefore what passed on the occasion of the justice going into the room was a substantial waiver of the right to be present during any lawful and proper communication between

justice and jury.   Had he told the justice to go in and see what they wanted of him and then return, and invite the parties in, the justice would not have been misled.   We would not relax the rule that has been wisely adopted.   It a safeguard against abuse ; but while we maintain the rule in its integrity, we must see that it is not made a means of misleading justices and involving innocent parties in the consequences of a reversal of judgments, not on the merits, but for the violation of technical rules.   It is for that cause alone that the judgment in this case is assailed.   There is no pretence that the testimony was erroneously read to the jury ; and the evidence, such as it is, is returned by the justice.

Judgment affirmed.

