JOHN MITCHELL, AS ADMINISTRATOR, ETC., OF ALEX-ANDER MITCHELL, DECEASED, APPELLANT, *v.* EGBERT P. CARTER AND HORACE S. PARKER, RESPONDENTS.

*Verdict of jury — when set aside for irregular conduct of the jurors.*

Upon a motion to set aside a verdict for irregularity on the part of the jurors, it appeared that, after the adjournment for the day, the jury, having been charged, occupied the court-room, and found there the minutes kept by the justice holding the court; some of the jurors read portions of the minutes and commented thereon, and others attempted to do so, but were unable to make them out. The minutes did not contain all the testimony, nor were they used by consent of counsel.

*Held,* that the verdict subsequently arrived at was properly set aside for this irregularity.

*Neil* v. *Abel* (24 Wend., 185) followed.

APPEAL from an order of the Erie Special Term, setting aside the verdict in this action for irregularity and granting a new trial. The cause was tried at the Cattaraugus Circuit before Justice DANIELS and a jury. The jury was charged about 9 P. M. and retired to a room, and the court adjourned until morning. After the adjournment, the jury returned to the court-room and occupied it until morning. Justice DANIELS kept minutes of the testimony in a book, which he left on his desk in the court-room where the trial took place, and

the jury had access to this book of minutes. The constable, in his first affidavit, says it was proposed by some of the jury to examine the testimony kept by Judge DANIELS; the book was taken by the jury and read and examined by them, or some of them; that said evidence was commented on by the jury, after being so read and examined, and that said jury agreed upon said verdict after reading and examining said evidence. In his second affidavit he says the jury tried to read the stenographer's minutes and were unable to do so, and "that they afterwards looked at another book which deponent did not look at, and does not know what it was, and after looking at it a few moments each of the jurors who looked admitted that he was unacquainted with the handwriting contained in it, and was unable to make out its contents; that the two books mentioned were the only books referred to by the said jury after they retired, before they agreed on their verdict, * * * and deponent does not know that either of the books so referred to as aforesaid contained the minutes of Judge DANIELS taken on the trial of the cause." He then says all the statements in his first affidavit, which are "contrary to or inconsistent with the statements in his second affidavit, are untrue." One of the defendants makes an affidavit that at 11 P. M. he saw a light in the court house, and saw some of the jury standing at the desk where the judge kept his book of minutes, and also that the constable after the trial told him "the jury read and examined the minutes kept by Judge DANIELS on said trial and commented thereon." The affidavit of L. Spring, attorney for the defendant, states that about 11 P. M., while the jury was deliberating, "he went to the court-house and saw a light in said court-room where the trial took place;" also, "that before the opening of the court, on the morning of the 28th of September, and after the jury had agreed upon their verdict, deponent saw said book of Judge DANIELS on his desk and read the evidence as taken by Judge DANIELS of the testimony of the witness on the trial in said book; that said testimony as taken was quite full and legible, but the whole of it was not taken down in full as taken by the stenographer." That no consent was given that the book be read, and that he did not learn of it until some time after the trial. Affidavits of jurors were made to the effect that they read and com-

mented on the minutes, and other affidavits of other jurors were made to the effect that they looked at the book, did not and could not read it, as it was illegible and words abbreviated, that none of the jurors read it.

*H. W. Hill*, for the appellant.

*L. Spring* and *T. Corbett*, for the respondents.

HARDIN, J.:

Upon reading the affidavits used upon the motion, it is apparent (1st) that Judge DANIELS kept a book in which some of the evidence was entered, and (2d) that it was left on his desk in the court-room on the adjournment at night; (3d) that the jury occupied the court-room after the adjournment, most of the time, until they agreed, sealed their verdict, and separated, about five o'clock in the morning; (4th) that some of the jurors attempted to read the stenographer's minutes, and failed; (5th) that the jurors had access to the book kept by Justice DANIELS; (6th) that some of the jurors could not read his minutes; (7th) that some could read portions thereof, and did read portions thereof, and made comments in respect to the evidence so read in the minutes.

These conclusions are derivable from affidavits used upon the motion, exclusive of those of the jurors used to impeach their verdict. It is settled that the affidavits of jurors cannot be used to impeach or impair their verdict. (*Clum* v. *Smith*, 5 Hill, 560; *Williams* v. *Montgomery*, 60 N. Y., 648 ; *Dana* v. *Tucker*, 4 Johns., 487; *Green* v. *Bliss*, 12 How. Pr., 428). The declarations of jurors for such purpose are inadmissible. (*Taylor* v. *Everett*, 2 How., 23; *Clum* v. *Smith*, 5 Hill, 560).

Upon the conclusions drawn from the affidavits, the case of *Neil* v. *Abel and Annas* (24 Wend., 185), is an authority decisive of the motion against the plaintiff. In that case, in an action upon contract, tried before a justice of the peace, the minutes of trial kept by him were handed to a constable, and by him taken to the jury room, and in five minutes after withdrawn by the justice. The Common Pleas on *certiorari* reversed the justice's judgment, and on an appeal to the Supreme Court their judgment was sustained. BRONSON, J., in delivering the opinion,

collects the cases and concludes that the Common Pleas were right in holding this to be a fatal error.

He remarks incidentally that "the minutes of testimony kept by a justice of the peace are usually very imperfect." We might speculate in respect to the minutes of a justice of this court being presumed to be more perfect, but that would be unavailing in this case, as the affidavits show the minutes of Justice DANIELS did not contain all the evidence given upon the trial. The examination of the book of minutes by some of the jurors, without the knowledge and consent of the parties, must be held a fatal error, and the verdict, was, therefore, properly set aside. (See *Hancock* v. *Salmon*, 8 Barb., 564.)

It is the policy of the law to watch over the deliberations of the jury, and to guard them from all impressions and influences in respect to the issues involved not derived from a trial in open court, in the presence of the parties and their counsel, where ample opportunity is given to object to the admission of any evidence or comments not sanctioned by the law.

If minutes could be taken and read, it would be difficult to avoid the effect of marginal notes and underscorings of parts of the evidence and comments, which are sometimes found in the minute books of the most faithful, upright, and painstaking trial judges. Slight circumstances and inconsiderable observations may sometimes influence a juror's mind. (*Watertown B. & L. Co.* v. *Mix*, 51 N. Y., 561; *Schnapper* v. *Second Ave. R. R. Co.*, 55 Barb., 497.)

Private communication to a jury is very properly and strongly condemned by JOHNSON, J., in *N. B. L. Co.* v. *Mix* (*supra*). The burden of showing improper communications or observations, in writing or otherwise, should not be thrown upon a defeated party, who challenges any irregularity occurring in the deliberation hours of a retired jury. (*Id.*, 561).

The Special Term was right in setting aside the verdict and granting a new trial, and the order must be affirmed, with costs and disbursements.

TALCOTT, P. J., and SMITH, J., concurred.

Order affirmed, with costs and disbursements.